and we'll move on to the next matter on today's argument calendar, T.D. Bank v. Miller, 23255 and 24100. Mr. Porter? Thank you. Good morning. Arthur Scott L. Porter, Jr. with the firm of Fisher Porter Thomas, on behalf of the Miller. To my left, Joe Sparaccio. Good morning, Your Honors. I thought it best to begin with trying to outline the context of this case so we can give meaning to what has happened here. As the court knows very well, Mr. Miller, Michael Miller, passed in 2016 and he and his wife were the owners of a joint account at UBS Bank. As a result of Mr. Miller's passing, the monies that remained in that account after debts were paid were transferred by operation of law to Barbara Miller. T.D. Bank, a New Jersey bank, that is, it says it's headquarters in New Jersey, T.D. Bank, which made a loan in respect to property in New Jersey, filed suit against Barbara Miller. Importantly, T.D. Bank also filed a claim with the surrogates court in New York where Mr. Miller's estate was being probated. T.D. Bank is not the only creditor. There are at least two other substantial creditors, the IRS and Mr. Donald Jaffe. There are other minor creditors. T.D. Bank claimed that under New York law, it was entitled to the funds that were in the joint account, the net funds that were in the joint account. And it referred to and relied upon a New York banking statute for that position. And it said that the account was—the joint account aspect was created for the convenience of Mr. and Mrs. Miller. We took the position that the New Jersey law applied to the guarantee. And the district court—ultimately, the district court agreed with it, as to which law applied. The district court agreed that—I would take it further. The district court applied a New Jersey statute that neither the place— Correct. Correct. What we disagreed with as to the court's application of the New Jersey Multi-Party Deposit Account Act, particularly Section 7. Do I understand that Section 7 is—you never—was not raised by you or your adversary in the district court and was not argued in the— That's 100 percent correct, Your Honor. 100 percent correct. So you want at least a remand to be able to make the arguments that you're making in front of us on Section 7. That's correct, Judge. We would—we thought, we believe, and we think that it's clear that, in fact, the district court erred in not alerting the parties as to the grounds upon which it was going to decide. So I agree that you may have a ground for remand on—based on 56F, but set that to the side for a second. Sure. You know, all of these arguments that you're making are now before us. Correct. So why would we remand if they're in front of us? I'll tell you why, Judges, because what the district court did is it foreclosed our opportunity to dispute the application of the statute as it relates to two things. One is that the statute requires a determination that the estate is insolvent. That was never contested at the district court level. After this appeal was filed, the IRS issued a tax deficiency that changed the taxable estate, which was negative now to a positive, and now there's a huge tax bill being presented to the estate. But more importantly, I believe that since we were not given the opportunity to present the insufficiency of the estate, we were deprived of our opportunity to contest that. So you're saying—excuse me—you're saying that the facts—there are facts to be—that need in order to determine this issue, and, of course, facts have to be decided or ruled on in the first place by the district court. Right. And specifically, Judge, what I would—to answer both your questions— That's right. If, in fact, the insufficiency of the insolvency of the estate was at issue, we would have engaged the services of an accountant, of a tax expert, to evaluate the insolvency of the estate. And importantly, our position in the district court was, in fact, that the estate was—our position, although we didn't have to argue it in the—before the district court—was, in fact, the estate was not insolvent. Specifically, there are assets in the estate that are part of development projects that are appreciating still in value. And to some extent, the tax efficiency notice reflects that. So two things, Judge, is that we would have been able to present to the district court or to this panel an expert report that would have determined whether or not the estate was insolvent. And that, I think, is the critical aspect of what we've lost here, is the ability to fight that. Secondly, and I'd like to point out—and I only have two minutes left—is that if the court decides that the New Jersey statute applies, particularly Section 7, it is our position that, in fact, the plaintiff's case should be dismissed with prejudice. Why? Because the TD Bank did not follow the predicate requirements set forth in that statute. Number one, there's to be a written demand made to the personal representative of the estate. That was never done. Number two, an action should be brought within two years of the decedent's death. That was never done. And let's be clear here. Mrs. Miller is the executor and the beneficiary of that joint account. How often does that happen? That must happen all the time. Exactly, Judge. We think so. But that must happen all the time. It must also happen at least sometimes that a creditor seeks to, I guess, get something in an account, in a multiparty account. And yet there is not a single decision on Section 7 that I could find. Not a New Jersey decision. It is ironic. In New Jersey. In New Jersey. There's a case out of Utah and a case out of Missouri that is somewhat analogous to ours. We're talking about New Jersey. Exactly, Judge. And that's correct. How can that be? And I'm just asking because I'm curious now. We were too. So in our position is that the district court surprisingly and unexpectedly applied this New Jersey statute. And let's just recall, TD Bank is the party that would want the application of that statute. TD Bank argued that New York law applies. Now TD Bank embraces, hugs the New Jersey statute. So it's clear to us judges that the district court erred in not permitting the parties to brief and present facts and evidence to its decision and the basis for its decision. What we know, of course, is that Mrs. Miller is a New York resident. The estate is a New York estate. And we know that the UBS account is a New York City account. We also know that there are other avenues, other legal arguments that we could have brought if this issue had been raised. I take it as a matter of law. We do not have the ability. Sorry for this. We do not have the ability to certify a question to the New Jersey, any New Jersey court. Judge, it's a wonderful question. We researched that and we determined that you did not. Yeah. Yeah. So I rest on those grounds. If I could just ask very quickly on the issue of the presenting evidence on insolvency. I take it it's your position that TD Bank argued below in support of summary judgment that it should be able to get to the joint accounts under New York law. Is it your view that insolvency was not material to resolution of that aspect of the motion? It was not relevant because they moved under count one of their amended complaint for declaratory judgment. If they had moved under count two for fraudulent conveyance, they then would have had to establish insolvency. We also do make an argument if, in fact, the court's going to apply the New Jersey statute that the court should then abstain from interfering, in fact, with the New York probate process. Thank you, Your Honors. May it please the Court. Good morning. Joseph Lubertazzi on behalf of the appellee, TD Bank, and with me is my colleague, Deidre Burke. I think the issue, I would frame it differently as to what's presented to the Court today. The issue is whether or not the appellant who received millions of dollars from a joint bank account, money which, undisputed, was deposited there from the business of her husband who passed away, and can those funds be shielded from the claims of a creditor against Mr. Miller as a guarantor? And for New Jersey collection lawyers, the answer is simply joint accounts are reachable. And they're reachable both under… You did not argue this before the district courts because you were arguing that New York law applied and not New Jersey law, so you never got to that. That's correct, Your Honor, and indeed, in the opinion by Judge Romaro below, he indicated that TD Bank did not present New Jersey law. We argued New York law, and I disagree a few ways with the reasoning of the trial court. I believe strongly that the trial court was correct. So we argued a matter at Granwell, which was a New York court of appeals case, which said that creditors of an individual who passes away on a joint account can reach the proceeds of that account. The trial court below says, well, you have to show insolvency and pointed to some subsequent questions. I'm confused as I'm preparing for today and writing the brief, insolvency versus insufficiency. Granwell, there was $20 in the estate, and there were the claims of the son from the first marriage of a few thousand dollars. It's an older case. So to me, whether it's insufficiency or insolvency, insolvency, the definition for creditors' rights lawyers is liabilities exceed assets. Was that issue raised before Judge Romaro? It was. As a factual matter, it was, because in our statement of material facts, we point it to the tax return that was filed by Ms. Miller. I guess my question is as a legal – as a possible legal distinction, which is what I think you're drawing. I apologize, Your Honor. I don't recall, but clearly we put in our statement of material facts that the tax returns reflected $15 million of liability and $12 million of assets. And then when you dig into the tax returns a little deeper, there was $10 million of joint accounts, which were not part of the probate estate, and the trial court did make specific reference to there. So you did have that issue. So we do believe that under New York – that there was not a conflict between New York law and New Jersey law, but the trial court decided differently. And because we were arguing New York law, we did not argue cases under New Jersey law, and the judge looked at the section under the Multiparty Deposit Act, which was not argued by either party. But I would submit to the court that any court is allowed to adopt or interpret law separate and apart from any legal arguments that may have been made by the parties. That happens all the time. Well, Section 7 is a pretty obscure provision of New Jersey law. It appears that no court in New Jersey has even interpreted it. Do you agree that the district court should have at least given notice and opportunity? No, because really under 56F2, it's been interpreted by whether or not when the court is dealing with facts. And here there was no dispute as to the material facts, and that's why I make the distinction between facts and a legal argument. So that does not appear to have been the case in the – Willie. I would submit it was, Your Honor, because if you go back and look at the opinion in Willie, the pro se prisoner, plaintiff, filed a complaint alleging various violations, constitutional violations, due process. And the government made a motion under 12B6 to dismiss, and it survived the 12B6 motion stating that a claim had been stated. The government then made a motion to dismiss certain items or certain of the claims, and I think the court said it was conclusory or the movement's argument was conclusory, but did not address other claims. And the judge on his own went and said, well, now I'm going to look at the amended complaint, which talks about unsanitary conditions, and I'm going to look at the allegation that my private papers were destroyed. And without giving the petitioner an opportunity to supplement factually the allegations that have been in the complaint, the court then dismissed those counts, which had never been addressed. As a matter of law, on a motion to dismiss, so that's what I say. No, it was a summary judgment motion, Your Honor. The 12B6 motion was made and denied. But on summary judgment, it seems to me that there was a legal conclusion as well, no? There was, with no notice to the pro se prisoner that the court was going to consider these other counts. So you have the difference between allegations in a complaint versus a summary judgment motion and the ability of a party to put forth facts, and that, I believe, was the distinction in Wiley. Is 56F2 by its term limited to notice of facts as opposed to notice of facts or legal issues that might resolve a case? It doesn't say either way, Your Honor. If you look in the section, and I looked at it again this morning, Rule 56, all the sections talk about material facts, disputed facts, affidavits, so it's all factual. And again, the circuit has ruled in Wiley that the facts was the problem. And there's other cases out there also that say it's limited to facts. And if it wasn't limited to facts, then if this court were to decide that, and I want to talk about New Jersey, go on a second. If this court were to decide that, well, maybe I don't agree with the trial court reasoning, but I agree with the outcome, well, because the parties haven't briefed it, then are you limited in your decision? It's not a question, to me, as it's being framed here, it's not a question of whether it's limited or not limited. The question is, is it a better course? There can be circumstances, yes, but not in this situation where the law of New Jersey is very settled. We cited in our appellate brief, because, again, we didn't cite to the district court. How can you say it's settled? Judge Cronin. The ability of a creditor to reach a – the ability of a creditor to reach the proceeds of a joint account is settled under New Jersey law. We cited the Colasage case in our brief, and there's also a more recent appellate division decision out of the New Jersey Superior Court, Bank of America, which says – So are you asking us to affirm on different grounds than Section 7? Yes. I want you to affirm the result because, as stated, we did not argue New Jersey law before the trial court because you have the UBS accounts at New York Bank, I think it's Avenue of the Americas, where you have a defendant who's a New York resident, and we sued in the Southern District of New York so that when a writ issued, we would be able to enforce that. But if the court – and I can give the court the citation to the Bank of America case if desired. It's 453 New Jersey Super, page 50. It's a 2018 case, and it clearly holds that a creditor can reach assets in a joint account so long as the creditor establishes that the money in the account was deposited by the judgment debtor. And here that's undisputed. Ms. Miller did not have a source of income. The trial court so found that Mr. Miller deposited all the funds. One other item I'd like to point out is there's a number of inconsistent statements here by the appellant, and it's all in an effort to shield millions of dollars, approximately $3.5 million, from the claims of creditors because it's stated time and time again that the proceeds of these accounts are nonprobate property. But these monies are not being made available to pay creditors of Mr. Miller. We have the appellant in her personal capacity as a party in the suit. She's also the executor. And so there's not a situation where she's saying, well, you know, it's only right. And you follow the Witts case in New York, or you follow the Kolosoff case, and I'm not saying that correctly, in New Jersey that we cited in our appellate brief here, that a man has to be just before he's generous. The person who has the assets should be used to pay the claims. And you can't circumvent that by taking the proceeds of a joint account and not being used to pay creditors. You also have the situation of, well, we didn't prove or the estate may pay the claims some days. We're four years, five years, four and a half years into the probate. So let me just go back to something you said earlier about affirming on another basis, and then I want to turn your attention back to Section 7. Mr. Porter pointed out that at least on the surface and maybe by reference to Utah, Missouri law, TV bank was really required to go through a process. And there's a two-year period within which to do that. Can you just respond to that, if you would, under New Jersey law? I would. First of all, we did file the complaint here within two years of Mr. Miller's death. The complaint was filed. He passed away in December of 2016. We filed this complaint in November of 2018. Secondly, the statute that the district court relied upon are for New Jersey estates. We don't have a New Jersey estate here. I can only read the opinion of the court below and speculate. I believe the district court was saying under New Jersey law, can a creditor reach the proceeds of a joint account? And the first sentence of NJSA 17,16i-1 says that a creditor can reach the proceeds of a joint account when the estate is insufficient. And again, insufficient versus insolvent. I don't know that there's a distinction. But it does go on and set a remedy for a New Jersey estate. I don't know why the judge looked at that statute, but I would not want to remand here. Because your view is that it was really a New York probate proceeding. Well, whether it's a New York probate or whether it's New Jersey, as I said, for us New Jersey creditor lawyers, we levy on joint accounts all the time. In the Bank of America case that I provided to the court, the citation says as long as I can show that the money went into the judgment debtor contributed the funds, then I can reach those funds. So there's nothing really unique here. I can't explain why the trial court picked up that statute. But I can – we did cite to the court the Kolosov case. There's the Bank of America case, which is the 2018 case. There's other cases. So it's not – it's nothing unique here. That's why I say it's settled. That's a general matter outside the context of Section 7. Outside the context of that section. That's a big outside. Okay. Thank you very much. Thank you. We'll hear from Mr. Porter on rebuttal. Thank you. So I'd first like to state that the – there is an issue of fact – two issues of fact here. One is if, in fact, this statute applies as to insolvency. The second issue of fact is we have asserted all along that, in fact, the – That seems to me to be a legal issue. Judge, I understand what you're saying, but – These are, to me at least, important distinctions. Right. I think you can argue both sides. The other contested fact, disputed fact, is whether or not the joint account was created for convenience versus asset protection purposes. What I do want to draw Your Honor's attention to is the creditor rights statute that's embedded in the act, in the Multi-Party Deposit Account Act. And Section 7 is entitled Rights of Creditors. Rights of Creditors. The statute is not intended to be used by a single creditor, TD Bank. It is intended to protect two things, the beneficiary of the joint account and other creditors. If, in fact, TD Bank or another creditor had decided to adopt a strategy to collect this debt through this statute, which I suggest to you TD Bank was well aware of, it's just frankly implicitly acknowledged by Mr. Lubitazzi, it would have had to file the demand. It would have filed a demand to Mrs. Miller, who was the personal representative. And either Mrs. Miller, the probate court, or that creditor would have said, Mrs. Miller, you have a conflict here and you need to be removed as the executor or a special master has to be appointed to handle this claim. Then a lawsuit has to be filed within a two-year period. It would have to be filed against Mrs. Miller in her official capacity as the executor or personal representative. That never happened here. Mrs. Miller was sued in her individual basis, not in her capacity as an executor. So I think the statute certainly does not apply to this case. The court cannot allow a single creditor to come in and exploit that statute that the court below seems to give TD Bank the opportunity to do. So Mr. Lubitazzi asked us to, I think, affirm on a separate basis, namely that as a general matter, outside the context of Section 7, as you heard, a creditor under New Jersey law can reach the assets of a joint account when the probate funds are insufficient. Two things, Judge. One, those cases cited by Mr. Lubitazzi, except maybe one, all predate this statute. All right? Number two, it boggles my mind to believe that a New Jersey statute could be applied in this situation where there's essentially no context to the State of New Jersey and Mrs. Miller, and that the underpinnings of 56F2 is constitutional protections to all parties. Didn't you argue New Jersey law applies? Yes, we did, Judge. But that doesn't mean that we agreed that any law would be applied by the court below without being notified of— Well, that's a separate issue, but you agree that New Jersey law applies. New Jersey law applies, Judge, to the guarantee. But what we did not get was notice as to what particular obscure New Jersey law the court was going to rely upon, and neither did TD Bank. So I would submit to your honors that we have satisfied our burden for a remand. If your honors are intending to uphold the application of this statute, the case should be dismissed. I also submit that the doctrine of abstention would apply if the statute applies because the New York probate proceeding is going forward, and the abstention doctrine provides that the court should abstain if there's an administration of an estate going forward. And lastly, Judge, there was a ground— Did you make that argument, Judge Morano? I believe so, yes, Judge. The abstention argument? Okay. Yes. I may have missed it. Thank you, Judge. Thank you very much. That's it. Thank you very much. Sure. We'll reserve the decision. Your honors, thank you for having us in person. Yes. Thank you. Someday we'll see your face. It's a pleasure to be here. Happy Thanksgiving. The camera took pictures, but with masks. I'll let you collect your papers. Have a good Thanksgiving. Happy Thanksgiving.